IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>UNDETERMINED QUANTITIES OF<br>DIETARY SUPPLEMENT PRODUCTS<br>THAT ARE LABELED OR OTHERWISE<br>APPEAR TO CONTAIN<br>7-HYDROXYMITRAGYNINE, et al.,<br><br>      Defendant Articles. | Case No. 4:25-cv-00917-RK |

## SUGGESTIONS IN SUPPORT OF
## SHAMAN BOTANICALS, LLC'S MOTION TO DISMISS

Claimant Shaman Botanicals, LLC submits these suggestions in support of its Motion to Dismiss (Doc. #7).

## Table of Contents

Factual Background ..................................................................................................................6

Summary of the Complaint ....................................................................................................10

Argument and Authorities ......................................................................................................11

    I.    The Complaint Fails to Allege Sufficient Facts to Establish this
        Court's Jurisdiction ...............................................................................................12

    II.    The Complaint Fails to State a Claim that the Products are
        Subject to Forfeiture .............................................................................................13

        A.    The Government Has Not Sufficiently Alleged Detailed Facts to
            Support Its Claim that the 7-OH in the Products Identified in Exhibit B
            to the Complaint Constitutes a "Food Additive" that Makes the
            Products Adulterated .................................................................................14

        B.    The Government Has Not Sufficiently Alleged Detailed Facts to
            Support Its Claim that 7-OH Products Identified in Exhibits A and C
            to the Complaint are Adulterated Dietary Supplements ................................16

            i.    The Government has Not Sufficiently Alleged that 7-OH is a
                New Dietary Ingredient ...............................................................16

            ii.    The Government has Not Sufficiently Alleged there is
                Inadequate Information to Provide Reasonable Assurance
                of Safety of 7-OH .......................................................................17

Conclusion ..............................................................................................................................19

## Table of Authorities

**Cases**

*Baldridge v. Academy Sports + Outdoor*, No. 2:25-cv-04172-WJE, 2025 WL 3229314 (W.D. Mo. Nov. 19, 2025) .................................................................................................. 6

*Davis v. Jackson Cnty.*, No. 16-0024-CV-W-REL, 2016 WL 4098532 (W.D. Mo. July 28, 2016) ............................................................................................................................... 6

*Enervations, Inc. v. Minnesota Mining and Mfg. Co.*, 380 F.3d 1066 (8th Cir. 2004) ............... 6

*Spearfish Evans-Tonn Ditch Co. v. Horizon Invests., LLC*, 715 F. Supp. 3d 1219 (D.S.D. 2024) ................................................................................................................................ 12

*Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697 (8th Cir. 2003) ......................................................... 6

*United States v. $170,000 in U.S. Currency*, No. 13-01318 (MAJ), 2024 WL 2922718 (D.P.R. June 10, 2024). ..................................................................................................... 11

*United States v. $73,947.35 in U.S. Currency*, No. 3:18-cv-213-B, 2018 WL 2088390 (N.D. Tex. May 4, 2018) ............................................................................................................ 13

*United States v. 5012 N. 6th St.*, No. 4:13CV00498 JLH, 2014 WL 5590555 (E.D. Ark. Nov. 3, 2014) ..................................................................................................................... 13

*United States v. Food, 2,998 Cases*, 64 F.3d 984 (5th Cir. 1995) ............................................. 12

*United States v. Mask of Ka-Nefer-Nefer*, No. 4:11CV504 HEA, 2012 WL 1094658 (E.D. Mo. Mar. 13, 2012), *aff'd*, 752 F.3d 737 (8th Cir. 2014) .................................................. 11

*United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1 (D.D.C. 2013) .............. 11

*United States v. Quantities of Finished & In-Process Foods*, No. 1:13-cv-3675-WBH, 2017 WL 4456903 (N.D. Ga. Apr. 3, 2017) ........................................................................ 15

**Statutes**

21 U.S.C. § 321(ff)(C), (F) ......................................................................................................... 14

21 U.S.C. § 321(s)(6) ................................................................................................................. 14

21 U.S.C. § 334 .......................................................................................................................... 12

21 U.S.C. § 342(f)(1) .................................................................................................... 16

21 U.S.C. § 350b(d) ..................................................................................................... 16

**Rules**

Fed. R. Civ. P. Supp. G(8)(b)(i) .....................................................................................10

Fed. R. Civ. P. 12(b) .....................................................................................................10

**Other Authorities**

Alessa Thomas, *Making Sense of Supplements: Suggestions for Improving the Regulation of Dietary Supplements in the United States*, 2010 Mich. St. L. Rev. 203 (Spring 2010) ........ 17

Charles Veltri & Oliver Grundmann, *Current Perspectives on the Impact of Kratom Use*, 10 *Substance Abuse & Rehabilitation* 23 (2019) .......................................................................... 5

FDA Import Alert 54-15, published Feb. 21, 2025 ................................................................. 15

FDA News Release ......................................................................................................... 8

Jonathan Heywood et al., *Beneficial and Adverse Health Effects of Kratom (*Mitragyna speciosa*): A Critical Review of the Literature*, 192 *Food & Chemical Toxicology* 1, 2 (Oct. 2024) ............................................................................................................................ 5

Mason Marks, *Separation of Drug Scheduling Powers*, 134 Yale L. J. Forum 976 (2025) ....... 8

Stephen H. McNamara, *Dietary Supplements of Botanicals and Other Substances: A New Era of Regulation*, 50 Food & Drug L.J. 341 (1995) ...................................................... 14

This case demonstrates a rush to judgment by the U.S. Food and Drug Administration (FDA) in its desire to condemn Shaman Bontanicals' over-the-counter dietary supplements containing 7-hydroxymitragynine (7-OH). FDA seized 7-OH products from Shaman Botanicals based on nothing more than its own ipse dixit about the safety of those products. FDA calls 7-OH products "novel potent opioid products" and engages in fearmongering about a new epidemic following in the footsteps of heroin and fentanyl. But 7-OH is not a controlled substance like heroin and fentanyl, and the government's safety concern is unsupported. This is reflected in the Complaint, where the government *pleads no facts* to corroborate its conclusory allegations. This is not surprising because FDA last summer published similar conclusory allegations while admitting it was unable to link any serious injuries or deaths to 7-OH products. Without factual allegations, the Complaint does not meet the heightened pleading requirements for a civil forfeiture case *in rem* and should be promptly dismissed.

7-OH is a naturally occurring compound of the kratom plant (*mitragyna speciosa*), which is a member of the same botanical family as the coffee plant (*coffea*). Kratom has been consumed by indigenous populations in Southeast Asia for centuries and has been marketed and used in the United States since at least the 1980s.[1] Even the government concedes 7-OH occurs naturally in the kratom plant. (Compl. ¶ 10.) 7-OH in Shaman Botanicals' products is safe when used as indicated in the products' labeling.

---

[1] For example, kratom "was first commercially introduced into the United States in the 1980s and has gained popularity since the mid-2000s." Jonathan Heywood et al., *Beneficial and Adverse Health Effects of Kratom (*Mitragyna speciosa*): A Critical Review of the Literature*, 192 *Food & Chemical Toxicology* 1, 2 (Oct. 2024), available at: https://www.sciencedirect.com/science/article/abs/pii/S0278691524004794; *see also* Charles Veltri & Oliver Grundmann, *Current Perspectives on the Impact of Kratom Use*, 10 *Substance Abuse & Rehabilitation* 23, 26 (2019), available at: https://pmc.ncbi.nlm.nih.gov/articles/PMC6612999/ ("Anecdotal reports suggest that immigrants from Southeast Asia first imported Kratom into the United States in the 1980s and 1990s . . . .").

## Factual Background

Last summer, FDA sent a Warning Letter to Shaman Botanicals, attached as **Exhibit 1**. The letter alleged FDA had "serious concerns" about the safety of Shaman Botanicals' 7-OH products. The letter invited Shaman Botanicals to present its side of the story, stating: "If you believe that your products are not in violation of the Act, include your reasoning and any supporting information for our consideration." (**Ex. 1**, p. 2).

Shaman Botanicals did just that. It submitted a lengthy response to FDA's Warning Letter, with analysis as to why FDA's concerns were not legally or scientifically well founded. This response is attached as **Exhibit 2**.[2] The response to the Warning Letter included a safety analysis by six scientific and medical experts in relevant disciplines, including two experts in medical toxicology, neuropharmacology, and/or drug safety who have reviewed preclinical safety data (including an in vitro study, a rodent study, and a canine study) to conclude that no serious toxicity is observed with 7-OH, which has a therapeutic potency and safety profile that is either the same or better than other compounds derived from kratom that are not the subject of FDA action. (*See* **Ex. 2** at 6-10 & App'x 2-3, 7-9.)

---

[2] The Court can consider the Warning Letter on this motion to dismiss without converting it to a motion for summary judgment because the Warning Letter is a matter of public record and is incorporated by reference in the Complaint. *Baldridge v. Academy Sports + Outdoor*, No. 2:25-cv-04172-WJE, 2025 WL 3229314, *2 (W.D. Mo. Nov. 19, 2025) (public record); *Davis v. Jackson Cnty.*, No. 16-0024-CV-W-REL, 2016 WL 4098532, *3 (W.D. Mo. July 28, 2016) (incorporated by reference). The Court should also consider Shaman Botanicals' response to the Warning Letter for a complete perspective of the matter and to gauge the sufficiency of the government's allegations under the circumstances, because the response is also a matter of public record, and is necessarily embraced by the government's complaint. *See Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) (recognizing district court has "'complete discretion to determine whether or not to accept any material beyond the pleading that is offered in conjunction with a Rule 12(b)(6) motion'") (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366, at 491 (2d ed.1990)); *Enervations, Inc. v. Minnesota Mining and Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).

The warning letter response also provided opinions from three experts in medical toxicology, opioid pharmacology, behavioral pharmacology, and/or public health surveillance who have reviewed the available human data (including medical case reports, epidemiological surveillance data, and clinical outcome research) to conclude that there is no safety signal from 7-OH to support FDA's enforcement action. (*See* **Ex. 2** at 7-8, 10-18 & App'x 4-6.) The core safety conclusion in the warning letter response was summarized as follows:

> [T]he totality of the available scientific evidence—including in vitro, animal, and real-world human data—does not support FDA's conclusion that 7-OH presents a significant or unreasonable risk of illness or injury. The 7-OH in [Shaman Botanicals'] dietary supplements is a naturally occurring metabolite of kratom, chemically identical to that found in the kratom plant and in the human body after kratom ingestion. Preclinical studies of 7-OH demonstrate the compound's favorable safety profile, and expert medical toxicologists and clinical researchers have found no evidence of serious harm, widespread morbidity, or mortality attributable to 7-OH. FDA's concerns are not substantiated by current data, and the available evidence supports the conclusion that 7-OH does not pose a significant or unreasonable safety risk.

(**Ex. 2** at 18.)

Shaman Botanicals' response to FDA's Warning Letter invited follow-up legal and scientific dialogue. It is typical as a matter of administrative practice for FDA to write back with its evaluation of a warning letter response. In this case, FDA did not do that. Instead, FDA's next step was to initiate an administrative detention of Shaman Botanical inventory, followed by this civil forfeiture action *in rem*.

This preemptive action is surprising because it reverses course from the government's prior position on kratom and 7-OH. Under the Obama Administration in 2016, the U.S. Drug Enforcement Agency (DEA) announced an effort to schedule kratom and 7-OH products as controlled substances, but this was overruled by the U.S. Department of Health and Human

Services (HHS) under the first Trump Administration after it performed a logical cost-benefit assessment of those products. Mason Marks, *Separation of Drug Scheduling Powers*, 134 Yale L. J. Forum 976, 1005-7 (2025) (noting that "[t]he Assistant Secretary [of HHS] described several risks [of controlling kratom and 7-OH], including harms potentially imposed on vulnerable individuals.").

FDA's current position doubles back on the Trump Administration's prior conclusion that the benefits of kratom and 7-OH outweigh the unsubstantiated risks. In a departure from its past approach, the government now singles out 7-OH as a supposedly dangerous constituent of kratom (while leveling no criticism against kratom generally or its other constituents). As a practical matter, though, it is impossible to completely divorce kratom products generally from Shaman Botanicals' 7-OH products specifically, which are naturally derived from the kratom plant and have a safety profile the same as—or better than—other constituents of kratom. (*See* **Ex. 2** at 4-5, 8-10.) FDA attempts to thread this needle in its latest press release, suggesting that the 7-OH products seized from Shaman Botanicals are somehow different because they contain "concentrated 7-OH as an added ingredient."[3] But the Complaint in this case does not allege this phantom theory of "concentrated" 7-OH, or otherwise assert that 7-OH in Shaman Botanicals' products is anything other than a natural constituent alkaloid found in the kratom plant.

When the Trump Administration declared the opioid crisis a public health emergency in 2017, it expressly refused to regulate kratom and 7-OH because it found that "there is a significant risk of immediate adverse public health consequences for potentially millions of

---

[3] FDA News Release, available at:
https://www.fda.gov/news-events/press-announcements/fda-seizes-7-oh-opioids-protect-american-consumers.

8
Case 4:25-cv-00917-RK    Document 8    Filed 12/11/25    Page 8 of 20

users if kratom or its components [including 7-OH] are included in Schedule I . . . ."[4] This is because the Trump Administration determined kratom and 7-OH provide recognized health benefits in use for intractable pain, offer users an alternative to "highly lethal" opioids like heroin and fentanyl, give physicians more options for patient treatment without stigma, and promote research opportunities to harness the "potentially useful chemistry" of kratom and its constitutes (including 7-OH).[5] HHS outlined at the time that substantial additional information was required before regulation as a controlled substance could be justified, including scientific assessment of use patterns, scientific assessment of the scale and degree of potential dependence issues, scientific determination of use as a gateway drug, a valid prediction of adverse consequences of restricting use, and a scientifically valid assessment of causality for purported adverse effects.[6] The government has none of this information at present, and it certainly has not outlined in its Complaint an appropriate case—under its own guidance—for regulating and seizing 7-OH products.[7]

The government has not sufficiently alleged that 7-OH products are unsafe or subject to forfeiture, or that circumstances have changed to support this about-face. With no factual allegations to support this action, the Complaint should be dismissed.

---

[4] *See generally* Letter of Assistant Secretary of Health Brett P. Giroir, M.D., to DEA Acting Administrator Uttam Dhillon, dated August 16, 2018, attached as **Exhibit 3**, available at: https://images.go02.informamarkets.com/Web/Informa02/%7b548e6d56-2ea4-4da4-9404-0348b56e9a88%7d_dhillon-8.16.2018-response-letter-from-ash-radm-giroir.pdf?emci=48d4bdbc-c45f-ef11-991a-6045bddbfc4b&emdi=924f434c-c85f-ef11-991a-6045bddbfc4b&ceid=3352478

[5] *See* Giroir Letter, **Exhibit 3**, at 3-4.

[6] *See* Giroir Letter, **Exhibit 3**, at 3.

[7] It is apparent the government is not prepared to defend its position on 7-OH and lacks evidence to substantiate its safety claims. When the 7-OH products in this case were detained, Shaman Botanicals filed an administrative appeal that permitted a hearing and decision within five days to determine the propriety of the government's action. 21 C.F.R. § 1.405(a). The administrative appeal was dismissed when the government filed this case, suggesting the government dodged the appeal because it cannot presently meet its burden to justify its action.

## Summary of the Complaint

The government has seized 7-OH products "valued at roughly $1 million"[8] and sets forth the justification for its action in a six-page Complaint that contains just 23 paragraphs of allegations. Most of the allegations cover cursory issues, and the few allegations pertaining to the grounds of forfeiture are stated as legal conclusions and unadorned assertions lacking *any* factual detail. Rather tellingly, the government does not even mention the response to the Warning Letter that Shaman Botanicals provided to FDA.

The Complaint targets certain 7-OH products formulated as "shots" that are listed in Exhibit B to that pleading. (Doc. #1 at ECF 10.) The government claims that 7-OH is a "food additive" in these products because 7-OH is not generally recognized as safe in food, making the products adulterated and subject to forfeiture. (Compl. ¶¶ 7-8, 19-20.) This theory rests solely on the government's conclusory assertion that 7-OH constitutes a "food additive," but the Complaint fails to explain, or even allege, that the "shots" in Exhibit B are conventional food products to which the "food additive" analysis would apply.

The Complaint also targets certain 7-OH products sold as dietary supplements, listed in Exhibits A and C to that pleading. (Doc. #1 at ECF 9, 11-15.) The government claims these products are adulterated because 7-OH is a "new dietary ingredient" that is not proven safe. (Compl. ¶¶ 9-13, 21-22.) The claim that 7-OH is a new dietary ingredient is supported only by a conclusory allegation that it was not marketed before 1994 and that there is a lack of information on its safety. Both assertions are untrue, and the government's failure to allege any factual support for its position is fatal to its claim.

---

[8] FDA News Release, available at:
https://www.fda.gov/news-events/press-announcements/fda-seizes-7-oh-opioids-protect-american-consumers.

10
Case 4:25-cv-00917-RK    Document 8    Filed 12/11/25    Page 10 of 20

## Argument and Authorities

This civil forfeiture action is governed by Rule G of the Supplemental Rules to the Federal Rules of Civil Procedure for Admiralty or Maritime Claims and Asset Forfeiture Actions. Regarding the sufficiency of a complaint, Rule G provides that the pleading must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. G(2)(f). In other words, the government "must assert specific facts supporting an inference that the property is subject to forfeiture." *United States v. Mask of Ka-Nefer-Nefer*, No. 4:11CV504 HEA, 2012 WL 1094658, *1 (E.D. Mo. Mar. 13, 2012), *aff'd*, 752 F.3d 737 (8th Cir. 2014).

While the government is not required to set forth all its evidence, its pleading obligation is not a mere technicality, and Rule G reflects a pleading standard that is "more stringent than the general pleading requirements, an implicit accommodation to the drastic nature of the civil forfeiture remedy." *Id.* (quoting *United States v. $15,270,885.69*, No. 99 Civ. 10255, 2000 WL 1234593, *2-3 (S.D.N.Y. Aug. 31, 2000) (internal ellipses and brackets omitted)). "This heightened particularity requirement is designed to guard against the improper use of seizure proceedings and to protect property owners against the threat of seizure upon conclusory allegations." *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 14 (D.D.C. 2013). As one court has observed, the government "may not seize and continue to hold property upon conclusory allegations that the defendant property is forfeitable," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *United States v. $170,000 in U.S. Currency*, No. 13-01318 (MAJ), 2024 WL 2922718, *3-4 (D.P.R. June 10, 2024). As argued below, the government's Complaint does not meet these heightened pleadings requirements.

Rule G permits a claimant (like Shaman Botanicals) to file a motion to dismiss on any of the grounds outlined in Rule 12(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. Supp. G(8)(b)(i). Shaman Botanicals moves to dismiss the Complaint for lack of jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6).

## I. The Complaint Fails to Allege Sufficient Facts to Establish this Court's Jurisdiction

A motion to dismiss for lack of jurisdiction under Rule 12(b)(1) can be made as a facial challenge on the allegations alone, where the Court takes the factual allegations as true but disregards mere conclusions. *Spearfish Evans-Tonn Ditch Co. v. Horizon Invests., LLC*, 715 F. Supp. 3d 1219, 1224 (D.S.D. 2024). A plaintiff (in this case, the government) bears the burden of proof on a facial challenge and must allege sufficient facts to establish jurisdiction under the applicable standard. *Id.*

The government brings this civil forfeiture action under 21 U.S.C. § 334, which confers jurisdiction for seizure and condemnation of "[a]ny article of food . . . that is adulterated . . . when introduced into or while in interstate commerce or while held for sale (whether or not the first sale) after shipment in interstate commerce . . . ." 21 U.S.C. § 334(a)(1). By the express language of the statute, the necessary requirement for jurisdiction is that the subject products have moved in interstate commerce. *See United States v. Food, 2,998 Cases*, 64 F.3d 984, 989 (5th Cir. 1995) ("§ 334(a) is a judicial remedy available to the FDA allowing it to seize and condemn any goods that have been introduced into or are already in interstate commerce or after shipment is in interstate commerce . . . .").

Here, the government's assertion of jurisdiction in its Complaint is a single conclusory sentence that states: "The Defendant Articles consist, in whole or in part, of components that were shipped in interstate commerce from outside the state of Missouri." (Compl. ¶ 5.) The

12
Case 4:25-cv-00917-RK    Document 8    Filed 12/11/25    Page 12 of 20

list of products at issue is extensive and diverse (*see* Compl. Exs. A-C), yet the government fails to identify which of the various components for these numerous different products were shipped in interstate commerce. This is a critical failure, not a mere technicality. The products were seized from Shaman Botanicals' manufacturing facilities in Missouri (*See* Compl. ¶¶ 1, 6, 14-17), and there is no inference that can be drawn from any facts alleged in the Complaint that any component of the products moved in interstate commerce. The government's allegation is a conclusory assertion that this Court should not accept without more. This assertion that some unidentified components were shipped in interstate commerce would not satisfy the more liberal pleading standard under Rule 8(a), and it certainly does not meet the stricter standard of Rule G that requires the government to state sufficiently detailed facts to support a reasonable belief that it can meet its burden to establish jurisdiction.

The government has not met its burden to sufficiently allege jurisdiction. Accordingly, the Complaint is subject to dismissal under Rule G and Rule 12(b)(1).

## II. The Complaint Fails to State a Claim that the Products are Subject to Forfeiture

As noted above, the Complaint is subject to the heightened pleading requirements of Rule G and must be supported by sufficiently detailed facts. Simply put, "[t]he Government may not maintain a civil-forfeiture action with a complaint that gives the claimants no notice of the facts underlying the claim." *United States v. $73,947.35 in U.S. Currency*, No. 3:18-cv-213-B, 2018 WL 2088390, *2 (N.D. Tex. May 4, 2018). The "drastic nature" of civil forfeiture justifies a heightened pleading standard, which "is not merely a procedural technicality, but a way of ensuring that the government does not seize and hold, for a substantial period of time, property to which, in reality, it has no legitimate claim." *United States v. 5012 N. 6th St.*, No. 4:13CV00498 JLH, 2014 WL 5590555, *7 (E.D. Ark. Nov. 3, 2014).

In this case, the Complaint should be dismissed because the government fails to allege sufficiently detailed facts supporting either of its forfeiture claims.

### A. The Government Has Not Sufficiently Alleged Detailed Facts to Support Its Claim that the 7-OH in the Products Identified in Exhibit B to the Complaint Constitutes a "Food Additive" that Makes the Products Adulterated

The government seeks forfeiture of the products identified in Exhibit B to the Complaint on the basis that the 7-OH in those products constitutes a "food additive" that makes the products adulterated. (Compl. ¶¶ 7-8, 19-20.) These allegations are mere legal conclusions that lack any factual detail to substantiate the government's position that the 7-OH in these products is a "food additive," as opposed to a "dietary ingredient" as the government claims for the other 7-OH products at issue in this case that are identified in Exhibits A and C to the Complaint.

Under the Federal Food, Drug, and Cosmetic Act (FDCA), a food additive does not include "an ingredient described in paragraph (ff) in, or intended for use in, a dietary supplement." 21 U.S.C. § 321(s)(6). This exemption was installed in the statute with the Dietary Supplement Health and Education Act of 1994 (DSHEA), Pub. L. No. 103-417, 108 Stat. 4325 (1994). A dietary ingredient, as defined in the FDCA as amended by the DSHEA, includes an "herb or other botanical" and "a concentrate, metabolite, constituent, extract, or combination of any ingredient [that is an herb or other botanical]." 21 U.S.C. § 321(ff)(C), (F). Together, these provisions establish that an ingredient cannot be a "food additive" if it qualifies as a "dietary ingredient" under the FDCA. Stephen H. McNamara, *Dietary Supplements of Botanicals and Other Substances: A New Era of Regulation*, 50 Food & Drug L.J. 341, 343 (1995) ("From the perspective of the manufacturers and consumers of dietary supplement products, one of the most important provisions of the [DSHEA] is the explicit amendment of the FDCA to

14
Case 4:25-cv-00917-RK    Document 8    Filed 12/11/25    Page 14 of 20

prevent the term 'food additive' from being applied to a dietary ingredient in, or intended for use in, a dietary supplement."). This is a critical distinction that determines the burden of proof on safety—for a "food additive," the burden would fall on Shaman Botanicals to prove that 7-OH is generally recognized as safe; but for a "dietary ingredient," the burden rests with the government to establish that 7-OH "presents a significant or unreasonable risk of illness or injury under conditions of use recommended or suggested in labeling." *See United States v. Quantities of Finished & In-Process Foods*, No. 1:13-cv-3675-WBH, 2017 WL 4456903, *1 (N.D. Ga. Apr. 3, 2017).

FDA previously described Shaman Botanicals' 7-OH products as dietary supplements (Warning Letter, **Ex. 1**), without any claim that any of the products were conventional food products that contained food additives. The Complaint acknowledges that 7-OH is naturally derived from kratom and that "[k]ratom-derived 7-OH is a dietary supplement . . . ." (Compl. ¶¶ 10-11.) FDA publicly acknowledges that "[k]ratom is a botanical that qualifies as a dietary ingredient under section 201(ff)(1) of the [FDCA]."[9] All of this contradicts FDA's claim that certain Shaman Botanicals products include 7-OH as a food additive, and there are no facts alleged in the Complaint that would support such a theory. There is no factual or legal basis on which to assert that 7-OH is a food additive, and apart from bald legal conclusions in the Complaint (Compl. ¶¶ 8, 19), the government has not shown otherwise. The Complaint lacks the requisite pleading of sufficiently detailed facts under Rule G to support the government's food additive claim, and that claim for the products identified in Exhibit B of the Complaint is subject to dismissal for that reason.

---

[9] FDA Import Alert 54-15, published Feb. 21, 2025, available at:
https://www.accessdata.fda.gov/cms_ia/importalert_1137.html

## B. The Government Has Not Sufficiently Alleged Detailed Facts to Support Its Claim that 7-OH Products Identified in Exhibits A and C to the Complaint are Adulterated Dietary Supplements

The government seeks forfeiture of the 7-OH products identified in Exhibits A and C to the Complaint on the basis that those products purportedly are "adulterated" dietary supplements. (Compl. ¶¶ 7-8, 19-20.) Shaman Botanicals does not dispute that these products are dietary supplements under the FDCA, but the government has not alleged with sufficiently detailed facts that those products are adulterated.

The government asserts in paragraph 21 of the Complaint that the 7-OH products are adulterated under 21 U.S.C. § 342(f)(1)(B), which states that a dietary supplement is deemed to be adulterated if it contains "a new dietary ingredient for which there is inadequate information to provide reasonable assurance that such ingredient does not present a significant or unreasonable risk of illness or injury." As indicated in the statute, the government "shall bear the burden of proof on each element to show that a dietary supplement is adulterated." 21 U.S.C. § 342(f)(1). On the theory asserted in this case, the government must sufficiently plead two elements: (1) that 7-OH is a "new dietary ingredient" under the FDCA; and (2) that there is inadequate information to provide reasonable assurance of safety. The government has not sufficiently alleged either of these elements.

### i. The Government has Not Sufficiently Alleged that 7-OH is a New Dietary Ingredient

For purposes of the FDCA, a "new dietary ingredient" is one that "was not marketed in the United States before October 15, 1994." 21 U.S.C. § 350b(d). The Complaint alleges only in conclusory and circular fashion that "[b]ecause 7-OH was not marketed as a dietary ingredient in the United States prior to October 15, 1994, it is a new dietary ingredient." (Compl. ¶ 12.) But the government acknowledges that 7-OH is merely a constituent and metabolite of

kratom (Compl. ¶ 10), so it is indistinct from kratom as a dietary ingredient under the FDCA. 21 U.S.C. 321(ff)(1)(F) (defining dietary ingredient to include a "metabolite" or "constituent" of a botanical such as kratom that is included in 21 U.S.C. § 321(ff)(1)(C)).

The Complaint alleges nothing about when kratom (and by extension 7-OH) was first marketed as a dietary ingredient in the United States, and indications in academic literature are that it has been around since at least the 1980s, meaning that—by definition—it cannot be a new dietary ingredient. *See*, *supra*, footnote 1. Having necessarily been present in the market since the 1980s as an inherent component of kratom, 7-OH is also—by definition—not a new dietary ingredient. *See* Alessa Thomas, *Making Sense of Supplements: Suggestions for Improving the Regulation of Dietary Supplements in the United States*, 2010 Mich. St. L. Rev. 203, 219 (Spring 2010) (noting that components of old dietary ingredients used in new combinations or different dosages do not become new dietary ingredients).

Even if 7-OH could be distinguished from kratom as a dietary ingredient, the government has not alleged any facts to substantiate its conclusory assertion that 7-OH was not marketed in the United States before October 15, 1994. The Complaint is devoid of necessary factual allegations and therefore fails. Because the government has not properly alleged that 7-OH constitutes a new dietary ingredient, its entire theory of adulteration collapses and the claim for the products in Exhibits A and C to the complaint must be dismissed.

      **ii.**     **The Government has Not Sufficiently Alleged there is Inadequate Information to Provide Reasonable Assurance of Safety of 7-OH**

Even if the government had adequately alleged that 7-OH is a new dietary ingredient, its forfeiture claim would still fail because it does not plead facts showing a safety risk from the 7-OH products. The Complaint simply incorporates by reference the FDA's press releases

and Warning Letter. (Compl. ¶¶ 10, 13.) However, these public statements are equally conclusory, and specifically, they do not supply the factual allegations that would be required for the Complaint to meet the pleading requirements in this forfeiture case. The Court should reject the government's attempt to bootstrap this fact-free Complaint with references to its own previous fact-free statements.

The Complaint warns darkly of "potential" abuse and cautions that the products "may" be dangerous (*id.* ¶ 10), but this inflammatory speculation does not meet the government's statutory burden of pleading with specificity how the products are adulterated under Section 342(f)(1)(B) of the FDCA. This lack of specificity is all the more egregious because the statute places the burden of proof on safety on the government. At a minimum, the government should have pled specific facts sufficient to rebut the extensive safety information regarding 7-OH already provided to it in Shaman Botanicals' response to the FDA Warning Letter. The government's allegations also fail to address—let alone exclude—the possibility that these products would be subject to exceptions in Section 350b(a)(1)-(2) that prevent the products from being considered adulterated as a matter of law.

Before allowing the government to proceed with a drastic remedy of forfeiture, under the Federal Rules of Civil Procedure, this Court must require the government meet its heightened burden to allege sufficiently detailed facts supporting its claim. The claim for asset forfeiture cannot rest merely on conclusory assertions that Shaman Botanicals' 7-OH products are adulterated because, in some vague way, they come with "potential" concerns or may be "unsafe." The Complaint does not meet the heightened pleading requirement of Rule G, and it therefore should be dismissed for failure to state a claim.

## Conclusion

The government's Complaint is subject to dismissal on numerous grounds, including that it fails to sufficiently allege the Court's jurisdiction by stating detailed facts showing that the 7-OH products moved in interstate commerce; that it fails to sufficiently allege the products in Exhibit B are conventional food products adulterated by 7-OH as a food additive; and that it fails to sufficiently allege the products in Exhibits A and C are adulterated because 7-OH is a new dietary ingredient that lacks reasonable assurance of safety. For all these reasons, the Complaint does not meet the heightened pleading requirements of Supplemental Rule G and must be dismissed.

Respectfully submitted,

**KRIGEL NUGENT + MOORE, P.C.**

By: */s/ Stephen J. Moore*
Stephen J. Moore    MO #59080
Sean R. Cooper    MO #65847
Jennifer M. Cacchio    MO #71819
4520 Main Street, Suite 700
Kansas City, Missouri 64111
Telephone: 816.756.5800
Facsimile:  816.756.1999
sjmoore@knmlaw.com
scooper@knmlaw.com
jcacchio@knmlaw.com

*Attorneys for Shaman Botanicals, LLC*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed this 11th day of December 2025 via the Court's CM/ECF system, which shall send electronic notice of the same to the following counsel of record:

**Counsel for the United States of America**
Leigh Farmakidis
Assistant United States Attorney
Charles Evans Whittaker Courthouse
400 East 9th Street, Fifth Floor
Kansas City, Missouri 64106
leigh.farmakidis@usdoj.gov

David Sullivan
Senior Litigation Counsel
United States Department of Justice
450 Fifth Street SW, Suite 6400 South
Washington, D.C. 20044
david.sullivan2@usdoj.gov

                                         */s/ Stephen J. Moore*
                                         Attorney for Claimant