# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 4:25-cv-00917-RK |
| UNDETERMINED QUANTITIES OF DIETARY SUPPLEMENT PRODUCTS THAT ARE LABELED OR OTHERWISE APPEAR TO CONTAIN 7-HYDROXYMITRAGYNINE, et al., | |
| Defendant Articles. | |

## REPLY SUGGESTIONS IN SUPPORT OF
## SHAMAN BOTANICALS, LLC'S MOTION TO DISMISS

Claimant Shaman Botanicals, LLC submits the following reply suggestions in support

of its Motion to Dismiss (Doc. #7).

## Table of Contents

Table of Authorities ..................................................................................................................... 3

Introduction ................................................................................................................................. 4

Argument and Authorities .......................................................................................................... 5

    I.     The Complaint Fails to Allege Sufficient Facts to Establish this
          Court's Jurisdiction .................................................................................................... 6

    II.    The Complaint Fails to State a Claim that the Products are
          Subject to Forfeiture ................................................................................................... 8

          A.     The Government Has Not Sufficiently Alleged Detailed Facts
                  to Support Its Claim that the 7-OH in the Products Identified
                  in Exhibit B to the Complaint Constitutes a "Food Additive"
                  that Makes the Products Adulterated .................................................... 8

          B.     The Government Has Not Sufficiently Alleged Detailed Facts
                  to Support Its Claim that 7-OH Products Identified in
                  Exhibits A and C to the Complaint are Adulterated
                  Dietary Supplements .............................................................................. 9

Conclusion ................................................................................................................................. 13

## Table of Authorities

**Cases**

*Brown v. Medtronic, Inc.*,
  628 F.3d 451 (8th Cir. 2010) ........................................................................................... 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ........................................................................................................ 6

*Levi v. Anheuser-Busch Co. Inc.*,
  No. 08-00398-CV-W-RED, 2008 WL 4816668 (W.D. Mo. Oct. 17, 2008) ................................. 13

*Misischia v. St. John's Mercy Health Sys.*,
  457 F.3d 800 (8th Cir. 2006) ........................................................................................... 13

*Rand-Heart of New York, Inc. v. Dolan*,
  812 F.3d 1172 (8th Cir. 2016) ......................................................................................... 10

*United States v. 17 Bank Accounts*,
  No. 18-cv-189, 2019 WL 13225955 (D. Wyo. Mar. 29, 2019) ........................................... 5

*United States v. 286,161 Bottles*,
  No. 19C3876, 2020 WL 550598 (N.D. Ill. Feb. 3, 2020) ................................................... 5

*United States v. All Assets Held at Bank Julius Baer & Co.*,
  571 F. Supp. 2d 1 (D.D.C. 2008) ..................................................................................... 5

*United States v. Food, 2,998 Cases*,
  64 F.3d 984 (5th Cir. 1995) ............................................................................................. 6

*United States v. One Gulfstream G-V Jet Aircraft*,
  941 F. Supp. 2d 1 (D.D.C. 2013) .................................................................................. 5, 12

**Rules and Statutes**

Fed. R. Civ. P. Supp. G ................................................................................................... 5, 11

21 U.S.C. § 334 .................................................................................................................... 6

21 U.S.C. § 342 .................................................................................................................... 9

21 U.S.C. § 350b .................................................................................................................. 7

**Other Authorities**

Mengzi Zhang et al., *Kratom: Botanical Insights and Cultivation Practices
  for a Conspicuous Medicinal Tree Species* (July 2025) ......................................................... 7

<u>**Introduction**</u>

The government is caught in a double-bind that prevents it from properly alleging the critical elements of its seizure action against Shaman Botanicals' 7-OH products. The motion to dismiss first argues the government has not properly alleged jurisdiction because it has not identified which of the numerous components of the many challenged products moved in interstate commerce. (*See* Doc. #8 at 12-13.) The government responds to this argument on pages 7-8 of its brief (Doc. #17) by adopting statements from the academic literature cited in Shaman Botanicals' opening suggestions (*see* Doc. #8 at 5, n.1), which indicate kratom was imported from Southeast Asia and first sold in the United States in the 1980s.

The government describes these facts as "a matter of public record" that can be used on a motion to dismiss to support an inference that jurisdiction exists because kratom used in the Shaman Botanicals products must have travelled from Southeast Asia. (Doc. #17 at 8.) By conceding this information is a matter of public record that can be used to determine the sufficiency of its claim, and by adopting statements in the academic literature as part of its case, the government cannot parse what facts it would and would not like to take from that literature. With the government's position, it not only receives the benefit of the fact that kratom was imported from Southeast Asia, but it is also charged with the fact that kratom has been commercially available in the United States since being brought from Southeast Asia in the 1980s (as the literature also states).

The parties agree 7-OH is a metabolite and constituent of kratom The government's effective admission that kratom has been marketed and sold in the United States since the 1980s is fatal to its claim that 7-OH is a new dietary ingredient that renders the products adulterated under the federal Food, Drug, and Cosmetic Act (FDCA). This is outlined in the

4

opening suggestions (*see* Doc. #8 at 16-17, Argument § II.B.i), and the government does not address this argument in its response. The government's adoptions, admissions, and concessions show 7-OH products are not subject to seizure or forfeiture for containing a new dietary ingredient that adulterates those products. For this and other reasons discussed below, the Complaint should be dismissed because it cannot allege "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. G(8)(b)(i).

## Argument and Authorities

The government erroneously quotes Rule 8(a) that only a short and plain statement of its claim is required (Doc. #17 at 6), but the heightened pleading standard of Rule G demands more. The government's cited cases recognize Rule G is a "heightened pleading standard," *United States v. 17 Bank Accounts*, No. 18-cv-189, 2019 WL 13225955, *5 (D. Wyo. Mar. 29, 2019), that "requires a more particularized complaint" and "added specifics" for "procedural-due-process protections against improper use" of this "drastic" forfeiture remedy, *United States v. All Assets Held at Bank Julius Baer & Co.*, 571 F. Supp. 2d 1, 16 (D.D.C. 2008). Accepting the government's conclusory pleading here would reduce Rule G to less than a notice pleading standard. Even the government's cases indicate that this is not the law.[1]

---

[1] One case the government cites *dismissed* a forfeiture action because "conclusory" allegations of corruption and "suspicions" of criminal activity did not satisfy Rule G. *United States v. Gulf-stream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 15-16 (D.D.C. 2013). The government's allegations here are similarly insufficient assertions of mere "potential" safety risks. Another case found that Rule G was satisfied because "the government's amended complaint sets forth very detailed allegations." *Julius Baer*, 571 F. Supp. 2d at 17. There are no similar allegations in this case that could be described as anywhere close to "very detailed." And in *United States v. 286,161 Bottles*, No. 19C3876, 2020 WL 550598 (N.D. Ill. Feb. 3, 2020), the court found that the government had sufficiently alleged product adulteration under the FDCA with specific allegations about operational deficiencies and manufacturing violations. *Id.* at *4. There are no similarly specific or detailed allegations here. These cases all highlight why this case should be dismissed.

**I.      The Complaint Fails to Allege Sufficient Facts to Establish this Court's Jurisdiction**

The government does not dispute that federal jurisdiction under the FDCA requires the seized products to have moved in interstate commerce. 21 U.S.C. § 334(a)(1); *United States v. Food, 2,998 Cases*, 64 F.3d 984, 989 (5th Cir. 1995). Nor does the government dispute that the lone allegation regarding jurisdiction makes only a conclusory assertion that, collectively, the seized products "consist, in whole or in part, of components that were shipped in interstate commerce from outside the state of Missouri." (Doc. #1 ¶ 5.)

The Complaint identifies 128 different products the government seized, all in varying quantities and all with varying names, packaging, formulations and ingredients. (*See* Compl. Exs. A-C, Doc. #1 at ECF 9-15.) The government's blanket and conclusory allegation that all these products somehow moved in interstate commerce does not even satisfy the plausibility standard under Rule 8(a), let alone the heightened pleading requirement of Rule G for this civil forfeiture action. It is clear on the face of the Complaint that the finished products did not move in interstate commerce because they were manufactured and seized all in the State of Missouri. (Doc. #1 ¶¶ 1, 6, 14-17.) That leaves only the product ingredients to satisfy the jurisdictional requirement, but there is no specification of what "components" any particular product includes, let alone which of those components is claimed to have been shipped in interstate commerce. The qualification that components moved "in whole or in part" through interstate commerce leaves indefinite and uncertain which components support jurisdiction, and this shortcoming in the government's pleading is fatal to its case.

Federal courts are courts of limited jurisdiction, and it is incumbent on a plaintiff (in this case, the government) to allege sufficient facts to overcome the presumption against the exercise of federal jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)

6

("It is to be presumed that a cause lies outside this limited jurisdiction [of federal courts], and the burden of establishing the contrary rests upon the party asserting jurisdiction." (citations omitted)). The allegations of the Complaint fail to do this because they lack necessary detail, and the government tacitly admits this failure by instead adopting statements in the academic literature cited by Shaman Botanicals that kratom was imported from Southeast Asia in the 1980s and has been commercially sold and marketed in the United States since that time. (*See* Doc. #17 at 8-9; Doc. #8 at 5 n.1.)

The government argues that the statements are "a matter of public record" permitting an inference that the kratom used to manufacture the Shaman Botanicals 7-OH products was shipped from outside Missouri. (Doc. #17 at 8-9.) The statements support no such conclusion because the mere fact that kratom was originally imported from Southeast Asia to the United States more than forty years ago says nothing about where kratom is grown today or whether the kratom used to create 7-OH in the subject products came from outside Missouri.[2] There are simply no facts alleged in the Complaint to overcome the presumption against federal jurisdiction, and the case should be dismissed on that basis.[3]

---

[2] A recently published article notes that "[a]s a result of its recently increased popularity, kratom has been cultivated in Southeast Asia <u>and some regions of the United States</u>." Mengzi Zhang et al., *Kratom: Botanical Insights and Cultivation Practices for a Conspicuous Medicinal Tree Species* (July 2025) (emphasis added), available at: https://doi.org/10.32473/edis-ep653-2025. Under these circumstances, and given the presumption against federal jurisdiction and the complete lack of factual allegations in the Complaint, it cannot be presumed that the kratom used for Shaman Botanicals' 7-OH products came from outside Missouri.

[3] Even if statements in the cited academic literature would support an inference that the kratom used in Shaman Botanicals' 7-OH products came from outside Missouri, that only creates an impossible trap for the government because those same statements confirm kratom has been marketed and sold in the United States since the 1980s. As noted in the introduction above, this conclusively debunks the government's theory that 7-OH is a "new dietary ingredient" under the FDCA, which is limited to ingredients that were "not marketed in the United States before October 15, 1994." 21 U.S.C. § 350b(d). This is discussed in further detail below.

**II.     The Complaint Fails to State a Claim that the Products are Subject to Forfeiture**

The Complaint is also subject to dismissal because the government's allegations fail to state a claim on which relief can be granted. The government's response to the motion to dismiss merely parrots the allegations in its Complaint and fails to substantively engage with the arguments of Shaman Botanicals. As discussed below, each of the government's theories is subject to dismissal for insufficient allegations.

> **A.     The Government Has Not Sufficiently Alleged Detailed Facts to Support Its Claim that the 7-OH in the Products Identified in Exhibit B to the Complaint Constitutes a "Food Additive" that Makes the Products Adulterated**

Regarding seized products identified in Exhibit B to the Complaint, the government alleges these are "food products" to which 7-OH has been added as an illegal "food additive," but the government's allegations are nothing more than formulaic recitations of the statutory provisions of the FDCA and mere legal conclusions on the "meaning" of those statutes. (*See* Doc. #1 ¶¶ 7-8, 19-20.) The Complaint alleges no facts about the nature of the products listed in Exhibit B to support the characterization as conventional food products and food additives, which are distinct from—and regulated very differently than—dietary ingredients under the FDCA. (*See* Doc. #8 at 14-15.)

The products listed in Exhibit B are liquid products packaged in bottles and consumed as "shots." But this alone does not make them food products, as other similar products that are also packaged in bottles and consumed as liquid "shots" are characterized differently by the government as dietary supplements in Exhibit C to the Complaint. The governments fails to explain this discrepancy, and does not allege any specifics about product labels, intended use, or any other facts to support its conclusory assertion that the products in Exhibit B are food products with food additives under the FDCA.

8

The government also fails to address discrepancies in FDA's prior characterization of all Shaman Botanicals 7-OH products as dietary supplements and FDA's general published statements characterizing 7-OH as a dietary ingredient under the FDCA, not a food additive. (*See* Doc. #8 at 15.) These discrepancies magnify the significance of missing factual allegations in the Complaint to support the government's clear shift in now characterizing certain 7-OH products listed in Exhibit B as conventional food products, rather than dietary supplements. Because the Complaint does not include any factual allegations to support the government's claim that products listed in Exhibit B are food products containing 7-OH as an illegal food additive for purposes of the FDCA, the Complaint cannot satisfy the pleading standard of Rule G and the Court should dismiss this case with respect to those products.

**B.** **The Government Has Not Sufficiently Alleged Detailed Facts to Support Its Claim that 7-OH Products Identified in Exhibits A and C to the Complaint are Adulterated Dietary Supplements**

Regarding the seized products in Exhibit A and C to the Complaint, there is no dispute that these products are dietary supplements under the FDCA, but the government has failed to sufficiently allege that the 7-OH in these products is a new dietary ingredient or that there is inadequate information to provide reasonable assurance of the safety of 7-OH. (*See* Doc. #8 at 16-18.) Again, the government's response brief merely repeats its formulaic and conclusory allegations without addressing—let alone disproving—the substantive arguments in Shaman Botanicals' opening suggestions (Doc. #17 at 10), which further highlights the inadequacy of its pleading and insufficiency of its legal theory.

For the government to state a viable seizure claim under the FDCA, it must sufficiently allege that the products at issue are adulterated because (1) they contain a new dietary ingredient (2) that lacks adequate information to provide reasonable assurance of safety. 21 U.S.C.

9

§ 342(f)(1)(B). There is no dispute the government bears that burden here. 21 U.S.C. § 342(f)(1). Its bare allegations fail.

*7-OH is Not a New Dietary Ingredient*. The government concedes virtually the entire argument on this issue in Shaman Botanicals' opening suggestions, including that 7-OH is a mere constituent and metabolite of kratom that is indistinguishable from kratom as a dietary ingredient under the FDCA, and that as a matter of law, 7-OH is not a new dietary ingredient because it is an inherent component of kratom, which has been sold and marketed commercially in the United States since the 1980s. (*See* Doc. #8 at 16-17.)[4] The government alleges no facts that would take 7-OH out of the botanical-constituent framework, and its response just repeats a string of legal conclusions and assertions on the "meaning" of various statutory provisions in the FDCA. (Doc. #17 at 10.) In assessing the sufficiency of a complaint on a motion to dismiss, these types of "conclusory or catch-all assertions of law and unwarranted inferences are rejected." *Rand-Heart of New York, Inc. v. Dolan*, 812 F.3d 1172, 1176 (8th Cir. 2016). The government does not allege kratom is a new dietary ingredient, but concedes just the opposite. Thus, the government's theory is legally hopeless because 7-OH is derived from kratom, which indisputably is <u>not</u> a new dietary ingredient under the FDCA and cannot support any claim of adulteration for purposes of product seizure.

The government's seizure claim fails for this reason alone. As a second, independent basis for dismissal, the Complaint also fails to sufficiently allege lack of adequate information to provide reasonable assurance of product safety.

---

[4] As outlined above, these facts about kratom's import and commercial availability in the United States are taken from the academic literature cited in Shaman Botanicals' opening suggestions (*see* Doc. #8 at 5 n.1), which the government describes as "a matter of public record" and adopts as part of its case (Doc. #17 at 8-9). These undisputed facts are properly considered by the Court on this motion to dismiss.

*No Factual Allegations to Support Product Safety Concerns*. The government admits it bears the burden to prove product safety concerns with 7-OH, 21 U.S.C. § 342(f)(1)(B), and at the pleading stage in a forfeiture action, the government must "state sufficiently detailed facts to support a reasonable belief that [it] will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. G(8)(b)(i). The government falls well short of meeting its heightened pleading standard with its threadbare recital on the matter of safety that merely parrots the statutory language. (Compl. ¶ 22.) Even the government's corollary allegation mentions only "potential" risks and that the products "may" be unsafe. (*Id.* ¶ 10.) The complete lack of detail in the Complaint on the issue of safety does not permit a reader to draw a reasonable belief that the government can meet its burden here.

In a thin exercise of circular logic, the government props up the conclusory allegations of the Complaint with reference to its own warning letter to Shaman Botanicals, which itself contains only conclusory assertions lacking factual detail. (MTD Ex. 1, Doc. #8-1.) Offering a larger *quantity* of bare assertions does not substitute for the *quality* of allegations necessary to meet Rule G. The government is stuck in its own echo chamber, and even the government's circular argument misses the point—FDA's warning letter speaks of a risk of "concentrated" 7-OH, but the Complaint does not allege use of concentrated 7-OH in the subject products or even allege the total 7-OH content in the products. This disconnect prevents the government from establishing a reasonable belief that it might meet its burden of proof at trial, which in turn, warrants dismissal of the case under Rule G.

The pleading deficiency here is particularly significant because the government's own record demonstrates the opposite of what it now claims regarding the safety of 7-OH. In 2018, the U.S. Department of Health and Human Services (HHS)—which oversees FDA—issued a

letter concluding that kratom and its constitutes—including 7-OH—should not be regulated as controlled substances because that action would create health risks for millions of people who benefit from use of those products. (Giroir Letter, MTD Ex. 3, Doc. #8-3, at 3-4.)[5] While HHS/FDA may change their minds on this, the heightened pleading requirements of Rule G demand that the government provide "sufficiently detailed facts" to support its about-face before it seizes nearly $1 million in private property. No detailed facts are stated in this case to substantiate the government's position; it simply acts on its own say-so. That is not nearly good enough, and this case demonstrates why the stringent pleading requirements of Rule G exist to "guard against the improper use of seizure proceedings and protect property owners against the threat of seizure upon conclusory allegations." *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 14 (D.D.C. 2013).

Not only does the Giroir Letter contradict the government's current position, but the substantial record before FDA on the 7-OH products at issue in this case demonstrates plainly that the government's safety claim is untenable. In response to FDA's warning letter, Shaman Botanicals submitted an extensive analysis on the safety of its products, including multiple reports of leading experts in the relevant fields. (*See* MTD Ex. 2, Doc. #8-2.) The government has no rebuttal to the substance of the warning letter response, and only attempts to sidestep this material by asserting—*without legal citation*—that the response is not a public record and should be ignored. (Doc. #17 at 7 n.4.) Contrary to this assertion, Shaman Botanicals' response to FDA's warning letter is part of the administrative proceedings and can be considered on

---

[5] The government does not address the substance of the Giroir Letter, but states in passing that the Court should ignore it. (Doc. #17 at 7 n.4.) The Giroir Letter is official correspondence issued by HHS reflecting its decision on the matter, and like FDA's warning letter on 7-OH products, it is a matter of public record that may be considered on a motion to dismiss without converting it to a motion for summary judgment. (*See* Doc. #8 at 6 n.2.)

this motion to dismiss. *See, e.g.*, *Levi v. Anheuser-Busch Co. Inc.*, No. 08-00398-CV-W-RED, 2008 WL 4816668, *4 n.5 (W.D. Mo. Oct. 17, 2008) (noting the court may consider "matters of public and administrative record" on a motion to dismiss, including letter to the government agency that is part of the "entire administrative record"). Like the Giroir Letter, the response to the warning letter seriously undermines the government's conclusory assertion of safety issues with Shaman Botanicals' 7-OH products.

The point of this argument is not to debate the merits, but simply to make clear that there is a substantial deficit in the government's allegations that must overcome its own prior contrary position *and* the substantial body of contradictory scientific evidence to show under Rule G that there is a reasonable belief it will be able to meet its burden of proof at trial. If this record was a blank canvas, perhaps the government's allegations would suffice. But that is not the case, and the Court is not required to turn a blind eye to all the information in the public record contradicting the government's position here. *Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010) (noting the court need not "draw unreasonable inferences" or "accept as plausible wholly unrealistic assertions"). On this record, the government cannot satisfy the heightened pleading requirement of Rule G and its Complaint must be dismissed.

<u>**Conclusion**</u>

The government rests on its insufficient allegations without requesting leave to amend or explaining how it could correct deficiencies in its pleading under Rule G. The Court should assess the Complaint as it comes and dismiss the case straightaway without granting leave to amend. *Misischia v. St. John's Mercy Health Sys.*, 457 F.3d 800, 806 (8th Cir. 2006) (finding no error in outright dismissal when plaintiff "made no motion for leave to amend and did not explain the substance of his proposed amendment").

Respectfully submitted,

**KRIGEL NUGENT + MOORE, P.C.**

By: /s/ Stephen J. Moore
Stephen J. Moore     MO #59080
Sean R. Cooper     MO #65847
Jennifer M. Cacchio    MO #71819
4520 Main Street, Suite 700
Kansas City, Missouri 64111
Telephone: 816.756.5800
Facsimile:  816.756.1999
sjmoore@knmlaw.com
scooper@knmlaw.com
jcacchio@knmlaw.com

*Attorneys for Shaman Botanicals, LLC*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed this 6th day of February 2026 via the Court's CM/ECF system, which shall send electronic notice of the same to the following counsel of record:

**Counsel for the United States of America**
Leigh Farmakidis
Assistant United States Attorney
Charles Evans Whittaker Courthouse
400 East 9th Street, Fifth Floor
Kansas City, Missouri 64106

Patrick Runkle, Assistant Director
David Sullivan, Senior Litigation Counsel
James T. Nelson, Senior Trial Attorney
United States Department of Justice
450 5th Street NW
Washington, D.C. 20044

/s/ Stephen J. Moore
Attorney for Claimant

14