# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-00917-RK |
| | ) | |
| UNDETERMINED QUANTITIES OF DIETARY SUPPLEMENT PRODUCTS THAT ARE LABELED OR OTHERWISE APPEAR TO CONTAIN 7-HYDROXYMITRAGYNINE, *et al.*, | ) ) ) ) ) | |
| | ) | |
| Defendant Articles; | ) | |
| | ) | |
| SHAMAN BOTANICALS, LLC, | ) | |
| | ) | |
| Claimant. | ) | |

## ORDER

This is a civil forfeiture action *in rem* brought by the United States Government under the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 334, to seize and condemn certain Defendant Articles.[1]  Before the Court is Claimant Shaman Botanicals' motion to dismiss the civil forfeiture complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 7.)  The motion is fully briefed.  (Docs. 8, 17, 20.)  After careful consideration and review, and for the reasons explained below, the Court **ORDERS** that Claimant Shaman Botanicals' motion to dismiss is **DENIED**.

### Background and Procedural Posture

In early November 2025, the U.S. Food and Drug Administration ("FDA") administratively detained Defendant Articles located at 1501 Iron Street, North Kansas City, Missouri, and 2461 N.W. Tullison Road, Riverside, Missouri, pursuant to an administrative detention order.[2]

---

[1] "Defendant Articles" refers to both the general categories of articles as described in the case caption and the specific products identified in Exhibits A, B, and C attached to the complaint. (*See* Doc. 1 at 1, 2 at ¶ 3, 9-15.)

[2] Under federal law, the FDA may detain food or dietary supplement products if it has "reason to believe that an article of food [including dietary supplements] is adulterated or misbranded."  *See* U.S. Food & Drug Admin., *Final Guidance for Industry What You Need to Know About Administrative Detention of Foods Small Entity Compliance Guide*, 2013 WL 990400 (Mar. 2013); *see also* 21 U.S.C. § 334(h);

(Doc. 1 at ¶¶ 14-17.) Defendant Articles are various food or dietary supplement products that are labeled to contain or otherwise appear to contain 7-hydroxymitragynine ("7-OH"), a constituent or metabolite of a plant, *Mitragyna speciosa*, commonly known as kratom. (*Id.* at ¶ 10.) The kratom plant naturally contains trace amounts of 7-OH.[3] (Doc. 1 at ¶ 10.) When ingested by a human, 7-OH binds to opioid receptors. (*Id.*) The Government contends that under the FDCA, 7-OH is not lawful in food or dietary supplement products and renders the products adulterated and thus subject to forfeiture.

Claimant Shaman Botanicals manufactures, holds, and distributes food products and dietary supplement products labeled to contain 7-OH.[4] (*Id.* at ¶ 6.) Prior to its administrative detention of Defendant Articles, the FDA sent a Warning Letter to Claimant Shaman Botanicals. (*Id.* at ¶ 13.) The Warning Letter stated that the FDA "has observed a proliferation of products containing 7-OH, and has serious concerns about products containing 7-OH," in particular noting that (1) "7-OH products have not been evaluated by FDA for safe use," (2) the "FDA has received adverse event reports associated with 7-OH containing products," and (3) "7-OH has been reported to have opioid-like effects." (Doc. 8-1 at 3.)[5]

---

21 C.F.R. Subpart K – Administrative Detention of Food for Human or Animal Consumption, 21 C.F.R. § 1.377 *et seq.*

[3] The attached exhibits to the complaint identifying Defendant Articles includes that various products contain between 15 mg and 154 mg of 7-OH. (*See* Doc. 1 at 10-15 (Exhibits B and C).)

[4] The record before the Court, including the parties' briefing and attachments, makes clear that "Company A" as referenced in the civil forfeiture complaint is Claimant Shaman Botanicals. For ease of reference, the Court will (like the parties) refer to Claimant Shaman Botanicals where the civil forfeiture complaint references "Company A."

[5] Claimant Shaman Botanicals attached to its motion to dismiss brief the FDA's Warning Letter that was otherwise referenced and cited in the civil forfeiture complaint. The Court may properly consider the Warning Letter at this motion-to-dismiss stage. *See Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 134 n.4 (E.D.N.Y. Dec. 7, 2018) (explaining that the district court may properly consider an FDA warning letter as a matter of public record in adjudicating a motion to dismiss); *Bell v. Boehringer Ingelheim Pharms., Inc.*, No. 17-1153, 2018 WL 2447788, at *2 (W.D. Pa. May 31, 2018) (recognizing that "[n]umerous courts have concluded that FDA warning letters are publicly available evidence of agency actions, of which the court may take judicial notice" and consider at the motion-to-dismiss stage).

The Court declines to consider at this juncture the other materials submitted by Claimant Shaman Botanicals, including its response to the FDA's Warning Letter—which is not itself part of the public record or otherwise referenced in the complaint—or the so-called "Giroir Letter" which, although it may be part of the public record, addresses kratom and 7-OH under the Controlled Substances Act. *See Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003) (recognizing that "the court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion" (internal quotation marks omitted; quotation modified)).

Defendant Articles identified in Exhibit A (located at 1501 Iron Street) and Exhibit C (located at 2461 N.W. Tullison Road) to the civil forfeiture complaint are alleged to be dietary supplements within the meaning of the FDCA, 21 U.S.C. § 321(ff). (*Id.* at ¶¶ 9, 11.) The civil forfeiture complaint alleges that the FDA "has stated publicly that 7-OH is not lawful in dietary supplements . . . and that consumption of 7-OH may be dangerous and lead to serious harm." (*Id.* at ¶ 10.) It further alleges that 7-OH "was not marketed as a dietary ingredient in the United States prior to October 15, 1994," and is therefore a "new dietary ingredient" as defined under 21 U.S.C. § 350b(d). (*Id.* at ¶ 12.) Accordingly, the civil forfeiture complaint alleges that the products in Exhibit A and C are "adulterated" under 21 U.S.C. § 342(f)(1)(B), "because they contain or are a new dietary ingredient, 7-OH, for which there is inadequate information to provide reasonable assurance that this ingredient does not present a significant or unreasonable risk of illness or injury." (*Id.* at ¶ 22.)

Defendant Articles identified in Exhibit B (located at 2461 N.W. Tullison Road) to the civil forfeiture complaint are alleged to be food products as defined under 21 U.S.C. § 321(f), to which 7-OH has been added as a "food additive," as defined under § 321(s), that "is not generally recognized as safe among qualified experts under the conditions of its intended use." (*Id.* at ¶¶ 7, 8.) Accordingly, the civil forfeiture complaint alleges that because 7-OH is an unsafe food additive that has not been authorized, the products in Exhibit B are therefore adulterated under the FDCA. (*Id.* at ¶¶ 19-20.)

After the civil forfeiture complaint was filed, Defendant Articles were taken into federal custody pursuant to a Warrant of Arrest *In Rem* issued by this Court. (*See* Doc. 4.) Following notice pursuant to Rule G(4)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"), (*see* Doc. 5), Claimant Shaman Botanicals filed a Verified Claim of Interest pursuant to Supplemental Rule G(5), asserting that Defendant Articles are not unlawful under the FDCA and are therefore not subject to detention, seizure, forfeiture, or condemnation.

**Legal Standard**

Supplemental Rule G governs forfeiture actions *in rem* arising under a federal statute such as the FDCA, 21 U.S.C. § 334. *See* Supp. R. G(1). A claimant in a civil forfeiture action "may move to dismiss the action under [Federal Rule of Civil Procedure] 12(b)."[6] Supp. R. G(8)(b)(i).

---

[6] In a civil forfeiture action, the Federal Rules of Civil Procedure apply "except to the extent that

Supplemental Rule G(2)(f) requires that a civil forfeiture complaint "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *See also* Supp. R. E(2)(a) (requiring that a civil forfeiture complaint assert claims "with such particularity that the defendant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading"). "Read in conjunction, [Supplemental Rules E(2)(a) and G(2)(f)] require the government to allege enough facts such that the court may infer that the property is subject to forfeiture."[7] *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 13-14 (D.D.C. 2013); *accord United States v. Mask of Ka-Nefer-Nefer*, No. 4:11CV504 HEA, 2012 WL 1094658, at \*1 (E.D. Mo. Mar. 31, 2012) (a civil forfeiture complaint "must assert specific facts supporting an inference that the property is subject to forfeiture" (internal quotation marks omitted) (collecting cases)).

Claimant Shaman Botanicals suggests that the pleading standard under Supplemental Rule G(2)(f) is "more stringent than the general pleading requirements." (Doc. 8 at 11 (quoting *Mask of Ka-Nefer-Nefer*, 2012 LW 1094658, at \*1).) The quotation from the Eastern District's decision in *Mask of Ka-Nefer-Nefer* is somewhat incomplete. The district court in *Mask of Ka-Nefer-Nefer* proceeded to note, given this "traditional[]" understanding of Supplemental Rule G(2)(f) (as adopted in 2006), that the Supreme Court's subsequent seminal pleadings-standard cases in *Twombly*[8] and *Iqbal*[9] "arguably shifted [the] general pleading standards [under Rule 8(a) of the Federal Rules of Civil Procedure] to a more heightened form of pleading," requiring a plaintiff to allege sufficient facts to state a claim that is "plausible[]." 2012 WL 1094658, at \*2; *see United States v. $22,173.00 in U.S. Currency*, 716 F. Supp. 2d 245, 249 n.25 (S.D.N.Y. 2010) (noting that the pleading standard under Supplemental Rule G(2)(f) for civil forfeiture actions is "substantially similar" to the federal pleading standard after *Iqbal*/*Twombly*).

---

they are inconsistent with" the Supplemental Rules. Supp. R. A(2); *see United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 149 (3d Cir. 2003) (recognizing that the Supplemental Rules "are special provisions that overlay the Civil Rules").

[7] Supplemental Rule E(2)(a) preceded the enactment of Supplemental Rule G, which is now the controlling standard for civil forfeiture complaints. As enacted, Supplemental Rule G codified and "carr[ied] forward" the then-existing caselaw as to Supplemental Rule E(2)(a) "without change." *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 571 F. Supp. 2d 1, 15-16 (D.D.C. 2008) (internal quotation marks omitted).

[8] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

The pleading standard under Supplemental Rule G "is one part of the process which guards against the improper use of seizure proceedings." *United States v. $32,100 in U.S. Currency*, No. 16-1339-EFM-JPO, 2017 WL 1062481, at *2 (D. Kan. Mar. 21, 2017) (internal quotation marks omitted). It ensures that a civil forfeiture complaint includes "sufficiently detailed facts" to allow a claimant to "commence[] a meaningful investigation of the facts and draft[] a responsive pleading." *United States v. Mondragon*, 313 F.3d 862, 866 (4th Cir. 2002); *see United States v. Aguilar*, 782 F.3d 1101, 1108 (9th Cir. 2015) (explaining that the civil-forfeiture pleading standard is a "low bar" that requires "facts detailed in the complaint [to] permit a reasonable belief that the [subject property] is subject to forfeiture and [that will] allow [a claimant] to draft a responsive pleading" (internal quotation marks omitted; quotation modified)). At the motion-to-dismiss stage in a civil forfeiture proceeding (much like in an ordinary civil proceeding) the Government need not meet or satisfy its ultimate trial burden to establish forfeiture. *See United States v. Eighty-Seven Thousand Sixty Dollars ($87,060.00)*, 23 F.3d 1352, 1354 (8th Cir. 1994). "[F]actual challenges are not permitted under Rule 12(b)(6)." *United States v. All Assets Held in Account Number XXXXXXX*, 83 F. Supp. 3d 360, 367 (D.D.C. 2015).

## Discussion

### I. Does the Civil Forfeiture Complaint Allege Sufficient Facts to Establish Jurisdiction?

First, Claimant Shaman Botanicals raises a facial challenge to subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure as to the civil forfeiture complaint. Specifically, it argues that the civil forfeiture complaint does not allege sufficient specific facts to plausibly establish subject-matter jurisdiction pursuant to 21 U.S.C. § 334, under which the FDA has authority to seek civil forfeiture only as to "[a]ny article of food . . . that is adulterated or misbranded when introduced into interstate commerce . . . or while held for sale in interstate commerce." *See United States v. Food, 2,998 Cases*, 64 F.3d 984, 989 (5th Cir. 1995) (noting that "§ 334 is a judicial remedy to the FDA allowing it to seize and condemn any [adulterated or misbranded] goods that have been introduced into or are already in interstate commerce").[10]

---

[10] The Court questions whether this is an appropriate challenge to subject-matter jurisdiction under Rule 12(b)(1) or whether Claimant Shaman Botanicals' argument is more properly considered a Rule 12(b)(6) challenge which goes to the sufficiency of the claim alleged on the merits. *See, e.g.*, *Henry Avocado Corp. v. Z.J.D. Bro., LLC*, No. 17-cv-4559 (ARR), 2017 WL 6501864, at *2 (E.D.N.Y. Dec. 19, 2017) (explaining that a defendant's argument raising a subject-matter jurisdiction challenge under Rule 12(b)(1) to a claim asserted under the Perishable Agricultural Commodities Act ("PACA") that the complaint did not sufficiently allege that the subject avocados were "sold and shipped in interstate

5

Claimant Botanicals argues (1) that the allegation that "[t]he Defendant Articles consist, in whole or in part, of components that were shipped in interstate commerce from outside the state of Missouri" is insufficient because the complaint "fails to identify which of the various components for these numerous different products were shipped in interstate commerce," and (2) that "there is no inference that can be drawn from any facts alleged in the Complaint that any component of the products moved in interstate commerce." (Doc. 8 at 12-13.) The Court disagrees. Under the FDCA, connection with interstate commerce may be presumed. 21 U.S.C. § 379a ("In any action to enforce the requirements of [the FDCA] respecting a . . . food . . . the connection with interstate commerce required for jurisdiction in such action shall be presumed to exist."). The Government need not at this early juncture *prove* by a preponderance of the evidence that Defendant Articles or a component of Defendant Articles were shipped in interstate commerce. Accepting the facts alleged in the civil forfeiture complaint as true—that Defendant Articles or a component of Defendant Articles, all of which are alleged to contain 7-OH as a constituent or metabolite of the kratom plant, were shipped in interstate commerce—and in light of § 379a, the Court finds the civil forfeiture complaint is sufficient in this regard.[11]

## II.     Does the Civil Forfeiture Complaint Allege Sufficient Facts to State a Claim?

Next, Claimant Shaman Botanicals argues that the civil forfeiture complaint fails to state a claim that Defendant Articles are subject to forfeiture under the FDCA, that is, that they are "adulterated" conventional food or dietary supplement products.

---

commerce" as required under PACA was really a Rule 12(b)(6) argument; recognizing the difference between a true subject-matter jurisdiction challenge and a "statutory standing" challenge). Nevertheless, neither party raises this distinction and at this juncture, whether viewed as a facial challenge under Rule 12(b)(1) or as an additional Rule 12(b)(6) argument by Claimant Shaman Botanicals, the result is the same.

[11] While the motion to dismiss was pending, the Government submitted a "Notice of Filing" and "Corrected Notice of Filing" appearing to provide notice of a press release by the Missouri Attorney General's Office concerning ongoing litigation in Missouri state courts regarding Claimant Shaman Botanicals' "kratom and 7-OH" products. (*See* Docs. 21, 22.) The Government suggests that to the extent Claimant Shaman Botanicals has agreed as part of a settlement in that action to suspend sales of certain products in Missouri, its argument that the civil forfeiture complaint here fails to adequately plead the interstate commerce element under 21 U.S.C. § 334 is moot because, were Defendant Articles returned, Claimant Shaman Botanicals would necessarily have to engage in interstate commerce to sell them. The Government's "Notices" are improper and immaterial to the resolution of Claimant Shaman Botanicals' motion to dismiss. The Court therefore **ORDERS** that Docs. 21 and 22 are **STRICKEN**.

6

**A.    Defendant Articles Identified in Exhibit B (Conventional Food Products)**

The Government seeks forfeiture of the "food products" identified in Exhibit B, alleging that they contain 7-OH as an unsafe "food additive" under the FDCA. Claimant Shaman Botanicals argues that the civil forfeiture complaint fails to state a claim as to these Defendant Articles because "[t]here is no factual or legal basis on which to assert that 7-OH is a food additive . . . ." (Doc. 8 at 15.)

Title 21 U.S.C. § 342 governs when food—including both conventional food (i.e., "articles used for food or drink of man or other animals," 21 U.S.C. § 321(f)) and dietary supplements (in part, "products (other than tobacco) intended to supplement the diet," *id.* § 321(ff))—may be deemed "adulterated," and thus subject to forfeiture. Subsection (a)(1) of § 342 establishes that conventional food may be "adulterated," among other ways, if it contains "any food additive that is unsafe." *See* 21 U.S.C. § 348(a) (establishing that food additives are presumptively unsafe absent some agency action undertaken by the FDA in regards to a particular food additive). Subsection (f)(1)(B) provides that a dietary supplement may be "adulterated" if it contains "a new dietary ingredient for which there is inadequate information to provide reasonable assurance that such ingredient does not present a significant or unreasonable risk of illness or injury."

> In turn, the FDCA defines "food additive" as
>
> any substance the intended use of which results or may reasonably be expected to result, directly or indirectly, in its becoming a component or otherwise affecting the characteristics of any food . . . if such substance is not generally recognized, among experts qualified by scientific training and experience to evaluate its safety, as having been adequately shown through scientific procedures . . . to be safe under the conditions of its intended use; except that such term does not include—
>
> . . .
>
> (6) an ingredient described in paragraph (ff) in, or intended for use in, a dietary supplement.

21 U.S.C. § 321(s). Section 321(ff), as relevant here, defines the term "dietary supplement" to mean "a product . . . intended to supplement the diet that bears or contains one of more of the following ingredients," including, *inter alia*, vitamins, minerals, "herb[s] or other botanical[s]," and a "metabolite or constituent" of such dietary ingredients. § 321(ff)(1).

The statutory provisions referenced above concerning dietary supplements and dietary ingredients were added to the FDCA through the Dietary Supplemental Health and Education Act ("DSHEA"), Pub. L. No. 103-417, 108 Stat. 4325 (1994). Federal courts have generally

recognized that the purpose of the DSHEA was "to clarify that dietary supplements . . . would be regulated in a manner similar to food products," rather than drugs. *Nutraceutical Corp. v. Von Eschenbach*, 459 F.3d 1033, 1038 (10th Cir. 2006); *United States v. Quantities of Finished and In-Process Foods*, No. 1:13-CV-3675-WBH, 2017 WL 4456903, at *1 (N.D. Ga. Apr. 3, 2017) (recognizing the DSHEA as "amend[ing] the FDCA to require the FDA to characterize dietary supplements as food rather than drugs"). In addition, under the standards for when a dietary supplement is deemed "adulterated," the FDCA as amended "in effect" relies on "a rebuttable presumption that the [dietary supplement] product is safe when used as intended," thus "giv[ing] a preference to dietary supplements," *United States v. Undetermined Quantities of All Articles of Finished and In-Process Foods*, 936 F.3d 1341, 1347 (11th Cir. 2019), whereas a food additive is presumptively unsafe. And finally, under the FDCA as amended by the DSHEA, the Government bears the burden of proof to show that a dietary supplement is "adulterated." 21 U.S.C. § 321(f)(1).

The crux of Claimant Shaman Botanicals' argument appears to be that if 7-OH is classified as a dietary ingredient under the FDCA as amended by the DSHEA (particularly to the extent it is a metabolite or constituent of the plant kratom, as alleged in the civil forfeiture complaint), it cannot also be classified as a food additive.

In *United States v. Undetermined Quantities of All Articles of Finished and In-Process Foods*, 936 F.3d 1341 (11th Cir. 2019) ("*DMAA Case*"), the Eleventh Circuit considered whether certain products the FDA had administratively detained were subject to forfeiture under the FDCA because they contained 1,3 dimethylamylamine ("DMAA"). The FDA sought forfeiture of the products containing DMAA as adulterated food containing an unsafe food additive. *Id.* at 1345. The issue in that case was, given that DMAA is "intended to supplement the diet"[12] (or conversely is not a conventional food or a component of conventional food), whether DMAA was a "constituent" of a "botanical." *Id.* at 1344. If so, the DMAA products would be subject to forfeiture under the framework applicable to dietary supplements rather than as an unsafe food additive. *Id.* at 1345.[13] The Eleventh Circuit ultimately agreed with the district court that DMAA

---

[12] The products subject to forfeiture under the FDCA in that case were also generally described as "fitness products aimed at bodybuilders and other athletes." *DMAA Case*, 936 F.3d at 1344.

[13] Below, the district court had similarly identified the dispositive question in the case as whether DMAA was classified as a "dietary ingredient" or a "food additive." *United States v. Quantities of Finished and In-Process Foods*, No. 1:13-CV-3675-WBH, 2017 WL 4456903, at *1 (N.D. Ga. Apr. 3, 2017). On appeal, the Eleventh Circuit explained that before the district court, the Government "did not attempt" to show that the DMAA products were subject to forfeiture as adulterated dietary supplements, for which the

was not a "dietary ingredient"—in particular, that it was not a constituent of a botanical (even to the extent the otherwise artificially produced compound had been found in trace amounts in geraniums of the genus pelargonium)—and that as a result the products were subject to forfeiture as adulterated food products including a food additive that was not generally recognized as safe. *See id.* at 1345-51.

Here, the Government alleges in the civil forfeiture complaint that the products identified in Exhibit B are "food . . . to which 7-OH has been added." (Doc. 1 at ¶ 7.) The complaint then alleges that 7-OH as a component of these "food" products is a "food additive." (*Id.* at ¶ 8.) The civil forfeiture complaint cites 21 U.S.C. § 321(f) and (s) in this regard. Claimant Shaman Botanicals' argument that 7-OH cannot be both a "dietary ingredient" and a "food additive" somewhat misses the mark. Under § 321(s), a dietary ingredient is excluded from the statutory definition of the term "food additive" when it is "in, or intended for use in, a dietary supplement." In other words, a dietary ingredient added to a conventional food product (and is therefore not "in, or intended for use in, a dietary supplement") does not appear to be excluded from the definition of "food additive" under the FDCA as amended by the DSHEA. Claimant Shaman Botanicals provides no legal authority or meaningful substantive analysis that as a matter of law a "dietary ingredient" cannot also be a "food additive," depending on the product (whether conventional food or dietary supplement) of which it is a part.

At this stage, the Court accepts as true the Government's allegation that the products identified in Exhibit B are conventional food products to which 7-OH would be a food additive and (by necessary implication) that they are not otherwise dietary supplements.[14] The civil

---

Government bears the burden. *DMAA Case*, 936 F.3d at 1344-45; *see also* Amended Complaint, *Quantities of Finished and In-Process Foods*, No. 1:13-CV-3675-WBH (N.D. Ga. Mar. 26, 2014) (doc. 21-1 at ¶ 18) (alleging that DMAA is *not* a dietary ingredient and "is, therefore, a food additive").

[14] Of course, if it becomes apparent at a later stage of this litigation that the products identified in Exhibit B are properly classified as dietary supplements under the FDCA, as defined under 21 U.S.C. § 321(ff), Claimant Shaman Botanicals' argument would hold more water to the extent 7-OH in those products might then be classified as a "dietary supplement" containing 7-OH as a constituent or metabolite of a botanical (i.e., kratom). At the immediate juncture, however, the Government has alleged sufficient detailed facts to state a claim for forfeiture of Defendant Articles identified in Exhibit B as adulterated food products containing an unsafe food additive.

The Court also notes that Claimant Shaman Botanicals' additional suggestion that whether 7-OH is a "food additive" or "dietary ingredient" is "a critical distinction that determines the burden of proof," also misses the mark. (Doc. 8 at 15.) Under § 342(f), the Government bears the burden of proof "to show that a *dietary supplement* is adulterated." (Emphasis added). Section 342(f) does not impose the burden of

forfeiture complaint is sufficient to state a claim under which there is a reasonable belief that the Government will be able to demonstrate at trial that the products identified in Exhibit B are subject to forfeiture as conventional food products containing an unsafe food additive, 7-OH.

**B.     Defendant Articles Identified in Exhibit A and Exhibit C (Dietary Supplement Products)**

As to the food products identified in Exhibit A and Exhibit C, the Government alleges that these products are subject to forfeiture because they are adulterated dietary supplements which contain a new dietary ingredient (7-OH) for which there is inadequate information to provide reasonable assurance that it does not present a significant or unreasonable risk of illness or injury. Claimant Shaman Botanicals argues that the civil forfeiture complaint does not sufficiently allege that 7-OH is a "new dietary ingredient" or that it is unsafe.[15]

Title 21 U.S.C. § 350b defines the term "new dietary ingredient" as applicable here to mean " a dietary ingredient that was not marketed in the United States before October 15, 1994, and does not include any dietary ingredient which was marketed in the United States before October 15, 1994."  The civil forfeiture complaint alleges that 7-OH is a "new dietary ingredient" and that 7-OH was not marketed as a dietary ingredient in the United States before October 15, 1994.  (Doc. 1 at ¶ 12.)  The FDA's Warning Letter (which all parties agree the Court can consider), similarly noted that "to the best of FDA's knowledge, there is no information demonstrating that 7-OH was marketed as a dietary ingredient in the United States before October 15, 1994."  (Doc. 8-1 at 3.)

Claimant Shaman Botanicals' principal argument is that the civil forfeiture complaint necessarily fails to state a claim because it "alleges nothing about when kratom (and by extension 7-OH [as a constituent or metabolite of kratom]) was first marketed as a dietary ingredient in the United States . . . ."  (Doc. 8 at 17.)  Claimant Shaman Botanicals presumes, with no supporting substantive legal analysis, that 7-OH "is indistinct from kratom as a dietary ingredient" for purposes of the "new dietary ingredient" element of the civil forfeiture claim under the FDCA. Title 21 U.S.C. § 321(ff) appears to list as a dietary "ingredient" a metabolite or constituent of a

---

proof on the Government when what might otherwise be defined as a dietary ingredient (such as a mineral or vitamin or constituent or metabolite of a botanical) is added to a conventional food product and thus may render the food adulterated as containing an unsafe food additive.

[15] Claimant Shaman Botanicals does not contest at this stage that the products identified in Exhibit A and Exhibit C are "dietary supplements" or that 7-OH is a "dietary ingredient" as defined under the FDCA as amended, to the extent it is a component of the asserted dietary supplement products.  (*See* Doc. 1 at ¶ 10.)

10

botanical, in addition to a botanical itself.  The Government's position appears to be that under 21 U.S.C. § 350b(d), what matters is whether the specific dietary ingredient itself was marketed as a dietary ingredient prior to October 15, 1994.  (*See* Doc. 1 at ¶ 11.)

Although the Court declines to consider the "academic literature" Claimant Shaman Botanicals cites, even if it did, it would purportedly demonstrate at most that kratom "has been around [commercially in the United States] since at least the 1980s."  (Doc. 8 at 17.)  It is not clear—and the parties have not provided any meaningful legal analysis at this juncture[16]—whether 7-OH would be a "new dietary ingredient" under the FDCA as amended if 7-OH and/or kratom was "commercially available" in the United States prior to October 15, 1994, or whether it had to have been marketed or commercially available specifically as a dietary ingredient prior to that time.  Nevertheless, at this juncture, the Court accepts as true the factual allegations in the civil forfeiture complaint, including that 7-OH was not marketed as a dietary ingredient prior to October 15, 1994, and is therefore a new dietary ingredient under the FDCA as amended.

Second, Claimant Shaman Botanicals argues that the civil forfeiture complaint fails to state a claim because it does not sufficiently allege facts showing a safety risk from the 7-OH products. The civil forfeiture complaint alleges that 7-OH binds to opioid receptors and that the FDA "has stated publicly that . . . consumption of 7-OH may be dangerous and lead to serious harm."  (Doc. 1 at ¶ 10.)  The complaint references press releases from the FDA on its publicly available website, including that "FDA has received reports of harmful effects associated with 7-OH products," including "anxiety, depression, gastrointestinal distress, insomnia, seizures and withdrawal symptoms."[17]

At this early pleading stage, the Court accepts the facts pleaded in the complaint as true. The civil forfeiture complaint is sufficient to give rise to a reasonable belief that the Government will be able to prove at trial that the products are adulterated dietary supplements including 7-OH as a new dietary ingredient as to which there is insufficient information it is safe.  The Government

---

[16] The parties' briefing as a whole was largely conclusory and somewhat unhelpful, particularly to the extent the issues raised appear to involve somewhat novel issues of statutory interpretation.  The Government's brief largely simply re-asserts the allegations set out in the civil forfeiture complaint without providing any legal authority or substantive analysis of the statutory language at issue.  Absent thoughtful and substantive legal analysis provided by either party, the statutory-interpretation issues raised are more appropriate to be resolved as this case progresses.

[17] *Products Containing 7-OH Can Cause Serious Harm*, FDA, https://www.fda.gov/consumers/con sumer-updates/products-containing-7-oh-can-cause-serious-harm.

is not required to plead specific facts "sufficient to rebut" the information contained in Claimant Shaman Botanicals' response to the FDA's Warning Letter, nor is the Government required to prove its case for forfeiture at this early pleading stage.[18]

In short, for the reasons explained above, the Court finds that the civil forfeiture complaint includes sufficient detailed factual allegations to allow Claimant Shaman Botanicals to commence an investigation of the facts and draft a responsive pleading, and that the civil forfeiture complaint supports a reasonable belief that the Government will be able to meet its burden at trial to establish that Defendant Articles are subject to forfeiture as adulterated food products under the FDCA.

## Conclusion

Accordingly, after careful consideration and review, and for the reasons explained above, the Court **ORDERS** that Claimant Shaman Botanicals' motion to dismiss, (Doc. 7), is **DENIED**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED:  July 6, 2026

---

[18] The other issues Claimant Shaman Botanicals raise are more merits-facing issues.

12